The next case is Strategic Technology Institute v. Secretary of Defense. Mr. Boland, when you're ready. Actually, can you give government counsel a minute? You can approach, but wait until he's... No, come on up. May it please the Court. James Boland for the Appellant Strategic Technology Institute. And I've reserved four minutes for rebuttal. DCMA's claim in this case accrued when STI failed to submit its incurred or indirect cost rate proposal. The contract required that proposal by a date certain, six months after the end of its fiscal year. That was a condition on the government's willingness to pay provisional billing rates in cost-type contracts in government contracting. The government will pay these temporary rates. They're based on anticipated costs. The condition for that agreement and to pay monthly bills to a contractor is that the contractor would then submit a proposal and justify those costs. There's no dispute, I think, that if the government had written to you and said, you need to submit these proposals or submit these supporting costs that we're lowering your rate or reducing it to zero, they could have done that, right? That's right. But that's not the action that's at issue here. The actions at issue here is separately much later you provided support, even though it was late, that they audited and found insufficient. Why aren't those two distinct acts? The reason is that when as soon as STI failed to submit the documentation, they didn't justify any cost. So at that point, because – Sure, the government had a right to do something, but we're in the FAR provision or the contract that it said the government has to do something. The government does not have to act immediately, but the statute of limitations says that they have to act within six years. If they want to – Disallow. No, no, no. Let me finish my thought. If they want to take the action that they're allowed to here, which is unilaterally set the rates, right? They didn't do that. If they had done that past the statute of limitations, you'd be right. They would be barred. But what they did was wait for you to submit the supporting documentation no matter how late and then audit it and determine it was insufficient. What's wrong with that? They're two distinct harms. Well, I would – I don't know if I would agree with that. I think that this wasn't a matter of – we're not appealing. The claim is not the inadequacy of the cost proposal. It's disallowance of cost. Right, because you agree that your supporting documents were inadequate. Or you're at least not appealing. That's what we have on appeal. We haven't contested that. That's right. That's right. But the government's claim is disallowing cost. And that claim – and our position is that claim accrued. It first accrued when STI did not justify any cost because the government could have disallowed everything. The government knew that it was injured at that point. Let me ask you this. Isn't the end result of your argument if a contractor violates its contractual duty to submit supporting costs on time and waits until six years have passed and submits insufficient documentation, then the government can never recover overpaid costs? I might caveat that with maybe if there's fraud. But, no, I would agree. I would agree with that. If the government sleeps on its rights for six years and takes no action, that's what the statute of limitations would require. Again, doesn't it – I mean I know you disagree, but it seems to me like there's two distinct rights at issue here. One is the right of the government, when you fail to submit anything, to unilaterally impose a rate or a zero rate. And one is the right of the government to audit your supporting documentation and adjust it to what should be the right thing. Let me just ask it this way because you disagree with that. But if those are two distinct legal acts and two distinct legal rights to the government, and the latter starts the statute of limitations again, then we affirm it, right? If that's correct, then yes. But, of course, we disagree with that. And I think when you look at the case law – But what's your support for that once you fail to produce documents, the government clock starts ticking for everything, including auditing documents that haven't even been submitted yet? Because the claim is not the – the government's claim here is not the insufficiency of STI's documentation. The claim is that STI did not justify their costs. And it's sort of – it's the contractor's burden, affirmative burden to justify costs. So if the contractor does not act, the government's injured. At that point, the government has the right under the FAR under the contract to disallow everything. They have the right to unilaterally set rates. In fact, DCMA's own manual says they're to do that. Ask for the proposal. If you don't receive the proposal, ask for it. So, again, I mean the gist of your argument is if the contractor doesn't submit its documents on time, then somehow there's an affirmative obligation of the government to go after the contractor even without sufficient documentation. Yes. Where in the FAR does it say that for the contract? I don't know if it says that in the FAR. I'm sorry. It's the statute of limitations. I mean that's the – Where besides the statute of limitations? I don't see the statute of limitations as by itself imposing this kind of mandatory obligation on the government when you breach this document clause. There's nothing in that clause that suggests the government has a mandatory obligation to reduce your rates to zero or whatever it thinks appropriate. Right. It says they may, right, or whatever the language is. Right, but I don't think the FAR tells – the FAR or contract also tells the government what time they have to submit for any garden variety breach of contract. I mean the FAR doesn't have a provision that says that, but that doesn't – the statute of limitations is not dependent on some other regulation that requires affirmative conduct. No, no. I get this, but we're not talking about a violation of the duty to submit the documents. I agree if the government had just tried to use the remedies under that, that you haven't submitted anything at all, they'd be out. But once you've submitted it, they have an independent right to audit it, right, and that's in other parts of the contract. And so if you violate that by submitting insufficient documentation, why isn't that a different cause of action? Because the cause of action – ultimately the claim that's at issue, that's appealed, is not a claim for inadequate documentation. It's a claim disallowing costs that were billed years ago. Well, you want to generalize it up to a very high level. You could do that for anything. You could just say, well, the claim is a breach of contract, and we breached the contract here, but another part of the contract that was breached later, you know, doesn't start a new cause of action. Well, I mean you take that out to the nth degree, and it's ludicrous, right? So we still have to look at whether these are two separate causes of action. And one is, you know, your failure to submit document allows them to unilaterally set rates, and one is when you fail to submit adequate documentation, they're allowed to set the proper rates based on what they think your documentation supports. If I see those two things different – I know you see those two things as the same thing. I don't. If they're different because one is about claim allowance and one is about a breach of a provision to provide documents, then there's two separate causes of action. Respectfully, you know, we disagree. Okay. I just wanted to get that clear because you have a lot of interesting legal arguments about claim accrual and all that kind of stuff and whether the knowledge role applies. If we see these as two distinct causes of action, none of that really matters, right? Because the second claim about proper documentation is within the six-year statute of limitations under any accrual rule. I would concede that that would be the case, but, of course, we do not characterize this as a – it's not a breach of contract claim. It's a claim for disallowance of cost. What is your best record site for what you contend the claim is? Is there some place in the record I could look at and see what you contend the claim is? I'll have to – I don't have that handy, but it is – I don't have that – Maybe when you get back on it. Conceptually, though, would it be the contracting officer's notice to you? Yes. That's what it would be? It's the November 30th, 2018 claim by the contracting officer disallowing costs. Because I've had a hard time with trying to figure out what the claim is here and trying to figure out how we decide what the claim is. Would we just go back to that document to understand what the claim is or is there some legal analysis that you would undertake? Because there's no complaint here that we would do, right? Right, right, because under the Contract Disputes Act, the government – when the government's the claimant, the government contracting officer issues a final decision declaring money owed back to the government. It's a monetary claim because – So is it JA-1107? Is that what you're saying is the correct description of the claim in your opinion? I think that's right. Yes. Yes, that is the claim letter at 1107. And what is there in that claim letter that indicates that it's a claim for something that could have been presented back in 2009, 2010? I don't think there's any reference to the ICPs. It just seems to be we've audited what you just recently gave us, doesn't even complain that it's so late, and just says here's our analysis of what you gave us. Well, this claim is the government unilaterally establishing STI's indirect rates, which, again, under the FAR, they had the right to do on July 1 of 2009. They had the right to do that. How do we conclude it's unilateral? It's clearly in response to your submission, is it not? It's an adjustment, not a unilateral establishment. There was no mutual agreement here on JA-1107. Well, there doesn't have to be a mutual agreement, but you had proposed rates that were based upon documentation. You submitted that documentation. The government rejected some of it and said we're adjusting the rates. This is a rate adjustment, not a breach of failure to provide documentation. I'm just a little confused by your whole argument here. When a contractor builds an indirect rate, let's say the provisional rate is 50 percent, and the government says, okay, they look at the documentation, and they say we're going to set it at 45 percent, and that difference, that 5 percent, that's the monetary claim. That's the amount that they're disallowing here. They didn't get the documentation here. Right, but they don't need it. They don't need it, but they can wait for it. You're saying they can't wait for it. Once you breach the contract by not providing the documentation, their time period starts running. They can't wait for you to supply actual supporting evidence. This is a dramatic, remarkable rule for contract administration for the hundreds of thousands of government contracts across the country with busy contracting officers and things like that. If somehow they have to set up a ticker system to say, oh, well, they were supposed to give us this on this date. If we don't get it, then we need to do something, otherwise we're going to be lost out. I mean, again, you acknowledge, I think, that if you hadn't submitted these and you submitted documents seven years later that showed you clearly weren't entitled to almost anything, that the taxpayer would be still stuck, right? Yeah, that's right, but under that scenario they're— That seems like a pretty remarkable argument. But I would argue that the outline you just described is remarkable. There's no limiting principle. Sure, the limiting principle is once you submit documentation, the government has six years to audit it and determine whether it supports it or not. If the government had waited more than six years after you submitted the documentation, then yes, it doesn't have the right to bring up that anymore. But again, if we determine— I'm sorry, I'm taking away into your rebuttal, I'll restore most of it. But if we see these as two different things, I don't see what the— Your point about the endless delay doesn't really hold out. If we see these as two distinct acts, both of them have a six-year statute of limitations, right? Right, but I would say that the contractor has no— Why would a contractor ever comply? I mean, a contractor would hold that indefinitely. There's no—the government can't force the contractor to produce documentation. Well, no, and then the government would pay you whatever rates you had asked for in the beginning of the contract. And maybe they're right and maybe they're not. That's the government's choice. But once you submit documentation, why can't they audit it? They can audit it, and I just want to be clear. In this case, DCAA audited it in time, and DCAA— Yeah, but that argument doesn't get you anywhere because, again, if they're allowed to wait for the documentation, then they're within the six years here. Correct. Can I come back to you seem to— you've acknowledged the claim is where Judge Cunningham pointed you to. It's the letter from the contracting officer. You seem to want us to find that that was, nonetheless, a unilateral determination by the government. How would we assess—do you have some authority for why we would view that as unilateral as opposed to perhaps a rate adjustment? I would say that it's—they're the same thing. I mean, it's a unilateral rate adjustment. It's effectuated by adjusting the rates and unilaterally setting the rates. How does the text of that document even suggest that? The document doesn't say, you failed to submit these documents, so we're going to establish the rates as X. It just goes through and looks at the documents it did submit and say, some of this is overstated. We're reducing your rates. Again, two different things. Right, right, but ultimately, I mean, the problem is there's an obligation to— when do the government should have known of a claim? I mean, where's the reasonable diligence? And that's a major part of this appeal. The government slept on their rights. They did nothing. And I think the idea of us waiting around 20 years— I think we have that argument, too. Thanks. I'll restore all your—we have a lot of questions. Let's hear it from the government. Thank you, Your Honor. This is the court. This court should affirm the board's decision rejecting SCI's statute of limitations argument because as the board concluded, the government neither knew nor should have known of its claim more than six years before it issued the contracting officer's final decision. Do you agree Appendix 1107 presents the claim? I'm sorry, Your Honor? Do you agree that Appendix page 1107 presents the government's claim? I'm sorry, Your Honor. Do I agree that— Yeah, can you open up your appendix to page 1107— Yes, Your Honor. Yes, Your Honor. —and tell me whether or not you agree with what opposing counsel said, that that presents your claim? Yes, the contracting officer's final decision represents the government's claim. Yes. So when could you have first brought that claim? Well, Your Honor, because that claim is entirely based off of the government's audit of SCI's indirect cost proposal, ICP for short, and that ICP was submitted in July of 2014, the government could not have brought that claim until after it conducted the audit of that document. Was there some claim you could have brought back in 2009, 2010, the day after they failed to timely submit the ICPs? Possibly, Your Honor. Maybe. That's unclear, I think, from the facts. Why do you say maybe? There's, I think, a clear contractual provision that required them to submit it within six months of the end of their fiscal year. And I think what Your Honor is getting to is, I think, what's at the heart of maybe some of the dispute here and what you were exploring with SCI's counsel, and that is there are two distinct types of claims here, as Your Honor has recognized. The first is, which I think SCI's counsel may be arguing for more, and that is a failure to submit an ICP or documentation at all. And the government has a right to remedy that after six months, right? Correct, Your Honor. Assuming that, under the facts of this case, it's unclear as to whether or not the government knew or should have known that the ICPs were due at that date. But that's a different— You're not going to get very far with that argument. I mean, you know, they had a contractual obligation to do that. You have a contracting officer and probably a contracting officer's representative monitoring this, so they should know that the things weren't submitted on time. But the question is, what action could you have taken if that happened? Well, Your Honor, under the FAR, I think as Your Honor has recognized, it's within the government's—the government may set unilateral rates if that happens. But here we have an intervening event of the submission of the ICPs in July of 2014, and once SCI submitted those—its ICPs in July of 2014, the government has a right to audit those and make determinations as to allowability of costs and do the things that the government does when it audits an ICP. So let me ask you, hypothetically, if a contractor doesn't submit the supporting cost and the government doesn't catch it for over 60 years and then you try to unilaterally set the rates, would you agree that the government would be barred then, assuming no fraud and everything? I think that's a—Your Honor, I agree with you that that's a closer call. I think, like anything else, there's facts of each case come into play. I don't know if there's necessarily a bright-line rule that would apply there. I think that under the FAR definition of claim approval, I think there would still need to be a factual analysis. Well, let's just assume the government should have known once they didn't submit them that they had breached the contract, and you waited over six years to address that breach. You'd be out, right? I think that—Right. Well, I think that, again, I agree with that hypothetical that if there was a determination by the board or the court that the government should have known that the ICP should have been submitted by a certain date and they weren't, I think that probably begins the accrual of that claim. And if the contractor submits supporting documentation whenever and the government waits more than six years to audit it, and again, assuming you should have known that these documents had been submitted, you'd be out on the kind of claim adjustment based upon those documents as well, right? Again, Your Honor, I don't think there's a bright-line rule and facts come into play. I'm not asking—And I understand, Your Honor. On behalf of the government, I'm just asking hypotheticals. If they had submitted these supporting documents and you had taken more than six years to issue a final decision saying these don't support your stuff, you'd be out. If it was—I'm not trying to argue it, but if it was determined that based on the ICP itself that the government should have known that certain costs were unallowable, et cetera, et cetera, then yes, and I think that the board cases recognize that, that the factual circumstances can vary and impact when the claim accrual begins. But here, the contracting officer's decision is within six years of them submitting the supporting documentation. That's correct, Your Honor. And that, in sum, Your Honor, is why the government's claim was brought within the statute of limitations. How do we assess what you contend is a material difference in the claim  and the claim that I think you've conceded the government could have brought on the day that the ICPs were not filed when they were on time? Well, Your Honor, I disagree that we've conceded that in that I think that there's still a factual analysis that— So you don't concede that you could have unilaterally set the rates on the day after they didn't submit the ICPs? Well, I think that based on the—I still think that there would be required a factual analysis as to whether or not the government knew or should have known that the ICPs— Could you have conducted an audit as soon as the day after the ICPs were on time? Did you have the right to do that? I think the FAR provides the government—I think it's a general right to audit a contractor's documentation, yes. All right, so come back to my other question. If we have to reach the question of whether the claim presented in that appendix site, the contracting officer's letter, is different than the claim you could have brought years earlier when the ICPs were untimely, how do we go about analyzing whether they're different? Is it whether it's unilateral or whether it's rate adjustment or what do we— I think the board went through in its opinion and went through and analyzed the costs that the government was questioning, and I think the board did a pretty good job of laying out that the government's claim was based on an audit of the ICP. I mean, it's— But it was ultimately to recover costs that the government should not have paid, which is something that potentially could have been determined years earlier when the ICPs were not— Well, I think that—and I know that STI focused on that. I think that's in part confusing a remedy with what the claim is. The claim here is based on an audit of documentation, and the government did not have that documentation. All right. Well, then Judge Hughes, I think, correctly pointed out some of the scary implications of STI's position, but I'm nervous about the implications of your position. The way STI writes it is that if we were to affirm, your view makes the government a completely passive actor in the face of a contractor's breach, preventing the government from asserting its claims unless and until the contractor decides to act against its own interests by untimely filing these ICPs that the government never asked for. Aren't they right? Well, I think this is a unique situation, first of all, Your Honor, in that because STI was—my understanding is because STI was new to the DCMA system, it wasn't part of their— I mean, I doubt it's unique given the large number of government contractors there are. Maybe it's rare, but it seems like if we were to affirm the board, we've created a roadmap for contractors to just silently not give the government the documents that it needs and hope that the government overlooks it, and then they have no incentive whatsoever to come forward with those documents because they're giving the government a claim that otherwise the statute is run on. Your Honor, I agree that theoretically that could happen. I don't think—practically speaking, I don't think it's that likely to happen. For the most part, based on the systems that the government has in place, these types of deadlines are caught and accounted for. And as a practical matter, the government and contractors, again, as a general matter, usually work together in terms of when contractors need extensions on these deadlines, they work with the government in procuring those extensions, and even when they miss those extensions, for example, just factually, the double-shot case before the ASPCA that we cite in our briefs, in that case the contractor requested two extensions, which were granted, and then still blew the deadline. And in that case, the government made a demand for the ICP, and it was submitted. A hypothetical, Your Honor, that—I'm sorry, go ahead. I mean the government doesn't have to wait for the supporting data, right? If it's late, they have a right to submit due unilateral rates, at least within the six-year statute of limitations. Correct. If they realize that the documentation is late, they can make a demand. So the contractors' parade of horribles is kind of tempered by that you at least have some ability Do you have any other abilities to address deficient performance on a contract other than just auditing the rates or setting rates if they breach the contract? With respect to failure to submit relevant—I'm sorry, adequate documentation, Your Honor? I mean isn't that grounds for all kinds of, you know, peer notices and default and stuff like that if they're not complying with contractual— Exactly, Your Honor, and that's exactly what I was going to get to. And I think that's the remedy that the government obviously has the ability to issue a show cause notice, telling the contractor that it's in risk of breach of the failure to submit an ICP. And if the contractor declines to issue an ICP, then the government could, you know, pursue a breach of contract claim against the contractor. Can I make sure I understand your answer to Judge Hughes? The government could unilaterally set the rates on the day after the ICP is untimely or it could not? Well, Your Honor, I think that's what—that's certainly I think what STI is—I think that's what their argument is. I think that's what you just conceded to Judge Hughes. That's why I want to make sure I understand. Well, no, Your Honor, as a practical matter, I don't think that's what the government— Can you just divorce yourself from the facts of this case? Does the FAR allow you, once they fail to meet their deadline, to submit these supporting costs? Assuming you knew or should have known, don't get hung up on that, can the government unilaterally set the rates? I think the FAR provides, Your Honor, that if a contractor fails to or refuses to submit supporting documentation to support its costs, that the government has the right, the ability, but it's not required, to set unilateral rates. That's a long yes, then. Yes. Yes, Your Honor. I believe that's what the FAR provides. Their position is they can, but they don't have to. Correct. They can, but they don't have to. So if we agree if the applicable claim was the 2014 claim, do you agree you don't have to reach the issue of the validity of the regulation? Yes, Your Honor. If—yes. Okay. Can I ask you about the validity of the regulation in case we do reach it? Under the Supreme Court's analysis in Rote-Kiski and some of the other cases that are cited, hasn't the Supreme Court given us guidance that we should not be writing discovery rules into statutes of limitations that clearly do not have them there? At least Congress didn't write them into the statute of limitations. Not necessarily, Your Honor. Obviously, here we have a regulation from—in the FAR that defines what accrual means. Right, but Congress didn't put a discovery rule into the statute of limitations when they amended the CDA, correct? Congress—correct. Congress didn't define what accrual meant in the CDA. And so if—I mean, why isn't that an unambiguous statute? Congress knew how to put exceptions to the six-year limitation in. They have one there for fraud. They don't have one in what we call the discovery rule. So isn't it wrong for the FAR counsel to write that in and for us to bless that? No, I don't think that's the case, Your Honor. First and foremost, I think that decades of precedent from this Court, there's not a single case, or if there is, please tell me, where the validity of that discovery rule part of the definition of accrual from the FAR has been challenged or questioned in this Court. We don't have any binding decision on that, do we? It's not clear from the case law, Your Honor, that that specific question has ever been posed to the Court. But I think what is clear is, going back almost, well, 30-plus years, that the Court has found that precedent elaborates that whether and when a CDA claim accrues is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case. And I don't think that the cases that STI cites, Rotitzky and Gabelli and Menominee tribe, Indian tribe, affect that. Those cases are in different contexts, with different statutes, with different language. Rotitzky specifically, their Congress specifically worded the statute of limitations to run within one year from the date on which the violation occurs. So there they were very specific as to the time period in which a claim had to be brought. They stayed away from the language of accrual itself. I don't think that there's any – Thank you. I think we have that argument. You're past your time. Okay. Thank you, Your Honor. Thank you, Your Honor. I'd like to first turn the Court's attention to JA 1110 and also back to 1107. In both places, the claim references the contracting officer, I am disallowing certain indirect costs and unilaterally establishing the rates as follows. The first page of the claim references unilaterally establishing STI's final indirect rates. That is exactly what the government had the power to do on July 1 of the two years at issue here. And even though the FAR didn't say he had to, the case law that we've discussed, if the government knows it has an injury, it has an obligation – I get that language, but there's two different things here. Like what you say the government could have done when it established unilateral rates would have just been to look at the rates and say, well, we're going to cut them by 25% or 50% or whatever. Not cut them by specific amounts based upon your documentation. That wasn't available to them after you failed to submit, right? Right, right. The exact numbers in here would not have been available. But I think – and this is an important point. This gets into the case law where just because you don't know the details, the details come out in discovery. A claimant can bring an action. They know they're injured. If there's a breach, you know there's been an injury. The claim has arisen. It's accrued. The actual amount changes in litigation. I would compare that to sort of a traditional litigation case where, okay, the government maybe could not have come up with this exact same chart here of the exact numbers because they didn't have information from that. In fact, it would have been impossible for them because you didn't submit them the information that allowed them to audit it. Right. Well, they could have guessed, but right. I mean you want to focus in on the words about unilateral, but what they're doing is you establish your indirect rates in your contract, and you have the proposals and whatever. And then after you submit the information, they're adjusting that based upon your information. You don't get a – there's not any further negotiation, so it's unilateral in that sense. But you've submitted information that allows adjustment. It's not just unilaterally submitting them without any information, which is what they would have done without the information. Right, but I don't believe that the submission of the proposal is an intervening event that somehow resets the statute of limitations. I mean the government has an injury. If a claim accrues and exists here, the government could bring their claim. It doesn't reset five years later when they email STI and say, hey, we don't see a copy of your proposal, which had been prepared, and they emailed it back in right away. That leads to this situation where STI is getting a claim 10 years, 11 years after these costs were incurred. I think an important point in the record, the ACO, the administrative contracting officer, with the claimant, the final decision itself is within six years of when you submitted these costs. That's right. I mean if you wanted a quicker decision on your rate proposals, you could have submitted the cost on time. Right, and I mean we obviously – we didn't appeal that part of the decision. Right, I mean you're saying that the government had the ability to hurry this along, but you did too. Right, and I understand that we didn't appeal the facts of termination, but we presented evidence that STI did submit them, and the board disagreed. But I think it's important that the administrative contracting officer testified that DCMA would know that the proposal was due on July 1.  And I don't see how any of the existing case law that suggests that claimants cannot sleep on their rights, that the government has to do nothing. Because right now, in this record, the government did nothing for five years. Can you come back to the parade of horribles? I'm trying to understand how likely it is. I expressed the concern to government counsel that if we affirm, contractors will now have an incentive or a clear path not to comply with their contracts and provide the documents to be audited. Is there any basis in reality for that concern, or is there not? Yes, and I know you also sort of – you sort of had a follow-up question on that point as well. But I think – Do you realistically think government contractors that want to bid on repeated contracts and be qualified for repeated contracts are going to intentionally sandbag to get inflated overhead costs? I mean, it's going to come out in performance evaluations. They're going to get defaulted. They have a lot of incentives not to do that, don't they? Right, but I want to be clear. The reason we made that point was it was to counter the government's argument that the claim could not be submitted. I mean, in other words, the issue is they've taken the position that our claim – the government was not permitted to bring their claim until we acted. That's sort of what we're challenging. Well, I think the government – that's not quite what they're saying. They're saying that they can't bring a claim upon the audited cost until you submit the cost, which obviously makes sense because if you haven't submitted the supporting documents, they can't do the audit and bring that claim. I think they acknowledged, maybe reluctantly, that they had a remedy before you submitted the thing, but those are two different things. Or if we see them as two different things, then they're two different sets of limitations. Yeah, and if I may, just to sort of take another – Yeah, but quickly, we've retried. I didn't mean to go back into that. We understand your position. Okay. If you have anything else, you're – I just want to sort of – You want your extra time. Just to wrap up, the board – there was no consideration of the should have known. They applied a bright line rule, and we requested the court reverse that. Thank you. Thank you. Case is submitted.